Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | | **Case No.: 19-34054-sgj11** |
| Debtor. | | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § § § § § § § § § § § § | |
| Plaintiff, | | **Adv. Pro. No. 21-03007-sgj** |
| vs. | | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | | |
| Defendant. | | |

### NEXPOINT REAL ESTATE PARTNERS, LLC F/K/A HCRE PARTNERS, LLC'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED ANSWER AND BRIEF IN SUPPORT

Defendant NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP" or "Defendant") files this Reply ("Reply") in Support of Motion for Leave to File Amended Answer and Brief in Support ("Motion for Leave to Amend") [Docket No. 16] and respectfully states as follows:

## I. REPLY

**A.      Defendant's proposed amendments are not futile.**

1.      Plaintiff alleges Defendant failed to adequately plead its proposed affirmative defenses because they do not provide Plaintiff with fair notice of the defense that is being advanced. *See* Debtor's Opposition to Motion for Leave to File Amended Answer ("Opposition"), ¶ 46. In the Northern District of Texas, the pleading standards in *Twombly* and *Iqbal* do not apply to affirmative defenses. *Klein v. Federal Ins. Co.*, Civ. Action Nos. 7:03-CV-102-D, 7:09-CV-094-D, 2014 WL 4476556, *5 (N.D. Tex. Sept. 11, 2014). Instead, the court applies the "fair notice" pleading standard for affirmative defenses, which requires "enough factual particularity to give the plaintiff 'fair notice' of the nature of the affirmative defense and prevent unfair surprise." *Id*. In some instances, such as with contract-specific defenses, merely pleading the name of the affirmative defense may be sufficient. *Klein*, 2014 WL 4476556 at *5; *Mary Kay Inc. v. Dunkap*, 2012 WL 2358082, *9 (N.D. Tex. June 21, 2012) (finding that failure of consideration and illegality are contract-specific defenses and, as such, the simple assertion of the name of the defense gives fair notice of the defense).

2.      Here, Defendant properly pleaded its two proposed defenses of ambiguity and condition subsequent such as to give Plaintiff fair notice of such defenses. As Plaintiff makes clear in its Opposition, the proposed affirmative defenses are similar to those asserted in the Dondero Proceeding and Plaintiff is both aware of the bases for and conducted fact discovery on such affirmative defenses. *See* Opposition, n.4, 6. Nonetheless, to the extent the Court believes Defendant has not provided sufficient factual particularity of its proposed affirmative defenses, Defendant provides additional detail as follows. With respect to Defendant's ambiguity defense,

Defendant asserts the entire Note is ambiguous, not a particular provision.[1] With respect to Defendant's condition subsequent defense, Defendant asserts that sometime between December 2018 and February 2019, a majority of the Class A shareholders of HCMLP agreed with Mr. Dondero (acting for NREP) that HCMLP would forgive the Notes at issue if certain portfolio companies were sold for greater than cost or on a basis outside of Mr. Dondero's control. This forgiveness would be in lieu of additional compensation to Mr. Dondero, as he viewed funding additional businesses across the Highland Capital Management complex to be compensatory. Until such time as the condition subsequent occurred, the maker could and would make payments of interest on the Demand Notes and installment payments on the Term Note.[2]

3.      Plaintiff next argues the proposed affirmative defenses are futile because they lack merit. *See* Opposition, Section B(1)(ii). However, Plaintiffs then attempt to argue under a Rule 56 summary judgment standard, instead of a motion for leave to amend standard. *Id.* The Northern District of Texas has refused to address the issue of futility in a motion for leave to amend context and instead does so in the context of a Rule 12(b)(6) or Rule 56 motion, "where the procedural safeguards are surer." *Garcia v. Zale Corp.*, 2006 WL 298156, *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) ("…the court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion."); *see, also, Dennis v. U.S.*, Civ. Action No. 3:16-CV-3148-G, 2017 WL 11496799, *2 (N.D. Tex.

---

[1]  For example, each of the Notes refers to the existence of possible "now existing" or "hereinafter arising" related agreements that are not specified. This is exactly what exists here and makes the Notes ambiguous on their face because the potential hereinafter arising agreement is not specified.

[2]  In addition, there is evidence to support this affirmative defense and Defendant expects more evidence will come forward during the remainder of discovery. *See*, Opposition, n.6; *see also*, Global Notes and Statement of Limitations, Methods, and Disclaimers Regarding Debtor's Amended Schedules of Assets and Liabilities, p. 3 "Intercompany Claims" [Docket No. 1082-1], Global Notes and Statement of Limitations, methods, and Disclaimer Regarding Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, p. 3 "Intercompany Claims" [Docket No. 247-1] (noting at least some loans to affiliates or related entities "may not result in allowed or enforceable claims.").

Nov. 15, 2017) ("With respect to the plaintiff's argument on the futility of the proposed amendment, the court resists the urge to look ahead to the merits of the defendant's affirmative defense."); *see also, Don Stevenson Design, Inc. v. Randy Herrera Designer, LLC*, No. 5:16-CV-1130, 2017 WL 10581124, *1 (W.D. Tex. Sept. 8, 2017) ("Finally, Defendants' Motion for Leave is not futile because additional evidence substantiating the statute of limitations defense may come forward during the remainder of discovery."). This Court should do the same and, to the extent Plaintiff contends that Defendant's proposed affirmative defenses should be dismissed as a matter of law, Plaintiff can move for summary judgment on those defenses.

4.    However, even if the Court does consider futility in the context of Defendant's Motion for Leave, the standard is not that under Rule 56 but instead, the pleading standard under Rule 12(f). *See, Southpoint Condo. Ass'n Inc. v. Lexington Ins. Co.*, Case No. 19-cv-61365, 2020 WL 639400, *6 (S.D. Fla. Feb. 11, 2020) (amendments to defenses are futile "where they would necessarily fail or are so lacking in merit on their face."); *Klein*, 2014 WL 4476556 at *5 ("The court may strike from a pleading an insufficient defense…in striking a defense as insufficient, the defense must be insufficient as a matter of law.") (citing Rule 12(f)). Defendant's proposed affirmative defenses are not lacking merit on their face or such that they will necessarily fail. As discussed above, the notes as a whole are ambiguous and there is evidence to support Defendant's condition subsequent defense. Although Plaintiff may claim such evidence is not credible, its Opposition is not the proper procedural vehicle to challenge such evidence or the merits of such defense.

5.    Plaintiff's last futility argument states Defendant partially performed under the Notes – however, such statements are misleading. The performance that was made is entirely consistent with the condition subsequent defense, as noted above. Thus, Defendant's alleged partial performance has no impact on the merits of Defendant's condition subsequent defense.

Defendant's proposed affirmative defenses are not futile, and the Court should grant Defendant's Motion for Leave to Amend.

**B.      Allowing the proposed amendments will not prejudice Plaintiff.**

6.      Plaintiff next argues that allowing the proposed amendments would prejudice Plaintiff because it may need to conduct additional discovery and delay proceedings and the trial on the merits. However, courts often find there is no prejudice where the defendant is amenable to re-opening discovery and when there is sufficient time before trial. *See Balderas v. Valdez*, Civ. Action No. 3:16-CV-2652-D, 2018 WL 902333, *3 (N.D. Tex. Feb. 15, 2018) (finding no prejudice where the plaintiff deposed certain employees *after* being notified that defendants were seeking to amend and, accordingly had the opportunity to depose those witnesses, defendant was amendable to re-opening discovery and staying related summary judgment deadlines); *Dennis*, 2017 WL 11496799 at *2 (finding no prejudice because "this is not a case where the defendant hopes to spring a new affirmative defense on the eve of trial…," "plaintiff was already made aware of the possibility that defendant might raise this defense," and "the parties are still in the discovery phase of the litigation…."); *Allen v. Target Corp.*, Civ. No. M-07-124, 2007 WL 9735894, *2 (S.D. Tex. Nov. 29, 2007).

7.      Similarly, here, Plaintiff will not be prejudiced by the proposed amendments. Defendant is not springing a new affirmative defense on the eve of trial, as trial is not for another four months (assuming such dates are not continued as a result of the pending Motion to Withdraw the Reference and Motion to Stay).[3] The parties are still in the discovery phase,

---

[3]    Further, the deadline for dispositive motions and trial may ultimately be continued irrespective of whether Defendants amends its answer due to the pending Motion to Withdraw the Reference and Motion to Stay Pending Resolution of the Motion to Withdraw the Reference. [Dkt. Nos. 20, 21, 24]. Plaintiff stated it was unopposed to the Motion to Withdraw the Reference subject to the Bankruptcy Court including in its report and recommendation that the Bankruptcy Court continue to resolve pre-trial matters, including dispositive motions. [Dkt. No. 20]. The Bankruptcy Court previously indicated that, out of deference to the District Court, it typically refrains from ruling on any motions in case the District Court wants to pull everything up.

Plaintiff has not yet taken any depositions in this case, and Plaintiff can include questions on Defendant's proposed affirmative defenses in any such depositions. In fact, as Plaintiff acknowledges in the Opposition, Plaintiff has already conducted discovery on these affirmative defenses in the Dondero Proceeding. In addition, Defendant is amendable to extending the discovery period and, because the deadline to file dispositive motions is not until September 6, 2021 and trial docket call is not until November 8, 2021, the Court could extend discovery without continuing any other deadlines in the Scheduling Order. *See* Scheduling Order [Dkt. No. 8].

8.      Regardless, delaying a proceeding for a matter of months by seeking to assert an affirmative defense does not constitute a "substantial reason" for denying leave to amend. As such, allowing Defendant's proposed amendment will not result in prejudice to Plaintiff and the Court should grant the Motion for Leave.

**C.      Defendant's Motion for Leave to Amend was not made in bad faith.**

9.      Lastly, Plaintiff alleges Defendant's Motion for Leave to Amend was made in bad faith but provides no support for such assertion other than the fact that Defendant asserts similar defenses to those Dondero asserts in the Dondero Proceeding. *See* Opposition, B(3). Bad faith exists where a movant attempt to present a new theory after the first theory failed. *See Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. Civ. A. 3:96-CV-2068R, 2003 WL 21339291, *6 (N.D. Tex. June 5, 2003). There is no basis for the assertion that seeking to amend to add an affirmative defense that is being asserting in a substantially similar proceeding constitutes bad faith. Instead, as Defendant stated in its Motion for Leave to Amend, in connection with discovery and its continued investigation of its defenses, including discussions with persons with knowledge, such as Mr. Dondero, Defendant became aware of the subsequent agreement forming the basis of its condition subsequent defense and the ambiguity in the Notes, including the signatory issues. *See*

Sauter Declaration, attached hereto as **Exhibit A**. Defendant brings its Motion for Leave to Amend in good faith.

10. There is no substantial reason to deny Defendant's request, Defendant's additional affirmative defenses could be waived if not allowed, and Plaintiff is free to challenge any of Defendant's affirmative defenses under Rule 56. Leave to amend should be freely granted and the Court should grant Defendant's Motion for Leave to Amend here.

## II. CONCLUSION

For these reasons, Defendant respectfully requests the Court (i) grant the Motion for Leave to Amend Answer; (ii) deem Defendant's First Amended Answer filed as of the date of the order granting this Motion; and (iii) grant Defendant such other relief at law or in equity to which it may be entitled.

Respectfully submitted,

*/s/ Lauren K. Drawhorn*
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email: jason.rudd@wickphillips.com
        lauren.drawhorn@wickphillips.com

**COUNSEL FOR HCRE PARTNERS, LLC (N/K/A NEXPOINT REAL ESTATE PARTNERS, LLC)**

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system upon counsel for the Plaintiff and all other parties requesting or consenting to such service in this adversary case.

Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Facsimile: (310) 201-0760
*Counsel for Highland Capital Management, L.P.*

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Fax: (972) 755-7110

*/s/ Lauren K. Drawhorn*
Lauren K. Drawhorn

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03007-sgj |
| HCRE PARTNERS, LLC (n/k/a NEXPOINT | § | |
| REAL ESTATE PARTNERS, LLC), | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF DENNIS C. SAUTER, JR.

I, Dennis C. Sauter, Jr., hereby swear under oath and penalty of perjury pursuant to the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1.     My name is Dennis C. Sauter, Jr.  I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am otherwise qualified to give this Declaration.  I have personal knowledge of the facts stated in this Declaration, or such facts are known to me from my review of the books and records of HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE").

2.     I am an attorney licensed to practice law in the State of Texas, and have been such since 2001.

3.     I am the General Counsel of NexPoint Advisors GP, LLC, the general partner of NexPoint Advisors, L.P. ("NexPoint").  I am providing this declaration in response to Debtor's

Opposition to Motion for Leave to File Amended Answer, in which Debtor argues that HCRE's Motion for Leave to File Amended Answer should be denied because the proposed amendment does not arise from a good-faith investigation.

4.    While I provided limited legal services to Highland Capital Management, L.P. (the "Debtor") and its affiliated entities as outside counsel before I became in-house counsel for NexPoint in February 2020, those services were limited to real estate transactions having nothing to do with the facts discussed in this Declaration.

5.    HCRE is an affiliate of NPA.

6.    HCRE has no employees.

7.    Instead, most of the services needed by HCRE to transact its business were customarily and historically provided by the Debtor.

8.    This was standard business practices for the Debtor and various other affiliated companies, including other advisers, within the Debtor's and its affiliates "complex" of businesses: the Debtor would employ most of the employees and then share those employees with HCRE and other "complex" entities.

9.    Thus, employees of the Debtor (many of whom were highly trained and specialized) provided many of the key services to HCRE on an as-needed basis. These services included legal, accounting, regulatory, compliance, IT, and tax services, among others. Additionally, the Debtor provided critical electronic infrastructure to HCRE and other "complex" entities, such that the books and records, and e-mail communications, of HCRE were actually stored on the Debtor's server.

10.    These facts are very important to the issues I will discuss below.

11.     On January 22, 2021, the Debtor filed its *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* (the "Complaint") against HCRE, thereby initiating this Adversary Proceeding.

12.     The Complaint concerns several demand notes and a term note entered into on May 31, 2017 (the "Notes"). Debtor seeks a judgment against HCRE for the Notes of at least $5,012,260.96 for the demand notes and for at least $6,145,466.84 for the term note.

13.     On March 3, 2021, HCRE filed its *Answer to Plaintiff's Complaint* (the "Answer").

14.     At the time that the Debtor filed the Complaint, I promptly undertook an internal review of the background facts concerning the Notes. I had no knowledge of them, since I had not been employed by HCRE. My review of the books and records of HCRE did not reveal any background facts regarding the Notes.

15.     Normally, I would have discussed the Notes with employees of the Debtor who also provided services to HCRE in order to assess what defenses or affirmative defenses to the Complaint existed. However, in this instance I was precluded from doing so.

16.     First, attached hereto as Exhibit 2 is a true and correct copy of an e-mail exchange between me and Mr. James Seery dated September 17, 2020. Mr. Seery was and remains the Chief Executive Officer of the Debtor. As stated in Exhibit 2, Mr. Seery was informing me that Debtor employees had been instructed not to discuss with me anything that is "inimical" to the interests of the Debtor, and that they would be terminated if they did so. This e-mail communication comports with other communications between me and Mr. Seery and/or Debtor's counsel where I was cautioned not to discuss with Debtor employees matters that may be adverse to the Debtor.

17.     Second, by the time of the filing of the Complaint, the Court had entered a preliminary injunction against Mr. Dondero, a true and correct copy of which is attached hereto as

Exhibit 3. That injunction prohibited Mr. Dondero from "directly or indirectly . . . communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided." As the information concerning the Notes was background information and not related to "services currently provided," I was concerned that, if I discussed the Notes with the Debtor's employees, the Debtor would argue that either Mr. Dondero or I violated the Court's injunction.

18. In sum, after the Complaint was filed, I was precluded from contacting the people that would have known something about the notes, *i.e.* the Debtor's employees, to discuss what they may have known. Although I had access to HCRE's books and records, it was not unlimited and, even if I had had full access, I would not have known what relevant books and records to search for in the many millions of files housed on the server without first obtaining a background of the facts regarding the Notes from Debtor employees.

19. I then worked with outside counsel at Wick Phillips Gold & Martin, LLP to review the Complaint and prepare and file the Answer. That original Answer listed 4 affirmative answers: (1) justification and/or repudiation; (2) estoppel; (3) waiver; and (4) offset and/or setoff.

20. The original answer did not contain any affirmative defenses related to the subsequent oral agreement that the Notes would potentially be discharged based on certain conditions being met in the future because I was unaware of the facts and circumstances giving rise to the defense.

21. The situation changed by mid-April, 2021. As of late February, 2021, the Debtor terminated most of its former employees. Many of those employees then formed their own company, Skyview Group, which then contracted with NPA (and others) to continue providing essentially the same services that they had previously provided. Thus, as of March, 2021, I was able to communicate with most former Debtor employees without fear of violating any court order.

22.     March, 2021, was exceedingly busy, to say the least. With the termination of the Shared Services Agreement, HCRE, other entities that I am general counsel to, and I were preoccupied with transitioning the services that the Debtor had been providing for more than a decade to a new entity, using new infrastructure, new offices, new networks, etc., all for the primary goal of ensuring a smooth and uninterrupted continuity of business and services provided by HCRE and others to third parties.

23.     In May 2021, HCRE retained additional counsel who were working on the adversary proceeding concerning notes made by Mr. Dondero who inquired about the existence about any similar notes.

24.     This triggered additional discussions, including discussions with Mr. Dondero, from which I came to understand the factual background concerning the Notes, ultimately concluding that the Notes were subject to forgiveness based on the occurrence of a condition subsequent.

25.     Therefore, in light of having learned of these facts, HCRE now believes that it has affirmative defenses to the Notes in the nature of a potential forgiveness based on a condition subsequent and ambiguity.

26.     Neither I, nor HCRE, nor any of HCRE's agents, have been less than diligent in investigating the Notes and the Complaint.

27.     HCRE respectfully requests that it be granted leave to assert these affirmative defenses in the Adversary Proceeding.

Signed: June ____9____, 2021.

DENNIS C. SAUTER, JR.

# EXHIBIT 2

**Rukavina, Davor**

| | |
|---|---|
| **From:** | James Seery <jpseeryjr@gmail.com> |
| **Sent:** | Thursday, September 17, 2020 4:17 PM |
| **To:** | DC Sauter |
| **Cc:** | Gregory V. Demo |
| **Subject:** | Re: Acis Settlement |

DC

I believe your concerns regarding the release are misplaced as it does not bind entities that HCMLP does not control. Greg can walk you through the language, but I do not believe it requires adjustment nor does it create any liability. To the contrary, it reduces liability.

With regard to the HCMLP employee prohibitions, no employee whether legal or non-legal can work on any matter that is inimical to the interests of HCMLP. I ,as CEO, and the Independent Board will make the determination as to whether an action violates the prohibition, and a breach of the prohibition will lead to termination for cause. I believe that most of the employees have been informed of this requirement and are following the directive.

With regard to transactional matters, HCMLP employees will continue to work with you on those issues that do not run afoul of the prohibition above. If there is a particular matter where you are taking a potentially adversarial action vis a vis HCMLP, please let me know what it is. We can then consider whether a customized operating protocol for that issue is needed or whether you will simply be on your own. I will make the determination with the advice of counsel. We do not believe the Texas rules of professional responsibility apply in this situation.

Please let me know what matter you are considering with respect to the immediately preceding paragraph, and we will consider how to best address your concerns.

Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

**From:** DC Sauter <DSauter@NexPointadvisors.com>
**Date:** Thursday, September 17, 2020 at 4:56 PM
**To:** Jim Seery <jpseeryjr@gmail.com>
**Cc:** Greg Demo <GDemo@pszjlaw.com>
**Subject:** RE: Acis Settlement

Jim/Greg, follow up on my email below. I have a few items that have been placed on my plate, and I really need to understand who I can speak with and the extent to which they are permitted to share information with me.

D.C. Sauter



O: 972.628.4117 | C: 469.877.6440

**From:** DC Sauter
**Sent:** Tuesday, September 15, 2020 8:55 AM
**To:** 'James Seery' <jpseeryjr@gmail.com>
**Cc:** Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: Acis Settlement

My apologies for copying Isaac. I was under the mistaken impression that he would have assisted in the settlement.

In my view, the requested clarification is beneficial to Strand, HCMLP, and the other "HCMLP Entities." The documents purport to release ACIS from claims on behalf of, among others, any entity that is "managed" by HCMLP and "respective current advisors, trustees, directors, officers, managers, members, partners, current or former employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns" of any "HCMLP Entity." Those "HCMLP Entities" lack the authority to bind a whole host of parties in that laundry list, which could result in claims against HCMLP, Strand, and the other "HCMLP Entities" by both the "ACIS Released Parties," who will claim they didn't receive the benefit of the bargain, and the parties on whose behalf the "HCMLP Parties" purported to release claims who didn't consent to the release.

Additionally, I'd like to visit with you all regarding the board's position that prohibits certain HCMLP personnel from working on certain matters.

First, I am unclear whether the prohibition applies to only HCMLP legal personnel or whether it applies to all HCMLP employees. Please clarify.

Second, as you may know, virtually all of these matters are falling into my lap, and in most cases I lack any knowledge about them. It would help me tremendously if current HCMLP employees, and particularly the legal personnel, could provide me with transactional background to assist in the transition of the matter. While I understand the board's concern with Judge Jernigan's order, I don't believe that the Texas Disciplinary Rules of Professional Conduct mandate or even permit an attorney licensed in the State of Texas to refuse to cooperate with a former client in the transfer of a matter to a new attorney. Rule 1.15(d) states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned." The comments to that rule provide additional clarity: "In every instance of withdrawal and even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client." T.D.R.P.C. Rule 1.15, comment 9. Proper steps may include providing information to new counsel or even continuing to represent the client for a limited time to meet impending deadlines. *Microsoft Corp. v. Commonwealth Sci. & Indus. Research Org.*, 2007 U.S. Dist. LEXIS 91550 *23-24 fn. 11 (E.D. Tex. Dec. 13, 2007). Even if the board insists that the HCMLP legal personnel cannot continue to represent others in non-HCMLP matters or matters adverse to HCMLP (irrespective of any conflict of interest analysis of whether those attorneys may continue to represent HCMLP in those matters), the ethical rules require that the attorneys provide assistance in transferring those matters to me or others.

Finally, I routinely handle, and am routinely asked to handle, legal matters that relate to real estate for entities owned or controlled by HCMLP (Park West, the Arizona assets, the Maple Ave. property, to name a few). I am not an HCMLP employee, and it's my understanding that NexPoint Advisors, L.P. is not compensated for the time I spend on HCMLP matters. I'm not suggesting that this arrangement should change, but it feels from my perspective that the board's position is only working in one direction. In other words, if I understand the board's position correctly, I can work on both NexPoint and HCMLP matters, but the HCMLP legal employees may only work on HCMLP-related matters. It has also put a significant amount of additional work on my plate. I would like to understand two things. First, what is the scope of my authority in these matters, and what is the proper protocol vis-à-vis you, DSI, and the board? I have tried to take the conservative approach in keeping you all informed and asking for consent or approval where I thoughts it

appropriate.  I assume this is how you'd like to continue to handle things, but I would like confirmation of that.  Second, I have heard that you all were working to transfer a couple of the legal personnel (perhaps Thedford and Post) to HCMFA so they could assist with the work load (particularly in the areas where I don't have a significant amount of experience).  I'd like to know where that stands and when relief can be expected.

I'm available most of today and tomorrow to discuss.


**D.C. Sauter**

# NEXPOINT

O: 972.628.4117  |  C: 469.877.6440

---

**From:** James Seery <jpseeryjr@gmail.com>
**Sent:** Tuesday, September 15, 2020 7:01 AM
**To:** DC Sauter <DSauter@NexPointadvisors.com>
**Cc:** Gregory V. Demo <GDemo@pszjlaw.com>; Isaac Leventon <ILeventon@HighlandCapital.com>
**Subject:** Re: Acis Settlement

DC.  We will discuss and revert to you.  Neither Isaac nor anyone else at HCMLP is permitted to work on any issues related to the settlement and release other than as directed by me.

Thanks

Sent from my iPad


> On Sep 14, 2020, at 7:08 PM, DC Sauter <DSauter@nexpointadvisors.com> wrote:
>
> Greg,
>
> I've been asked to review the attached release on behalf of HCMFA and the closed-end funds.  I'm concerned that the language below creates an ambiguity as to whether the closed-end funds and HCMFA have released claims against the ACIS parties:
>
> 1.    The release by Strand, which also serves as the general partner of HCMFA; and
> 2.    The release by each "HCMLP Entity" of its "respective current advisors, trustees, directors, officers, managers, members, partners, current or former employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns."
>
> We would like the final sentence in paragraph 1.a. of the Release to be revised to specifically identify HCMFA and the closed-end funds as parties not covered by the release.  Please let me know if you'd like to discuss in more detail.
>
>
> **D.C. Sauter | General Counsel, Real Estate**
>
> <image001.jpg>
>
> 300 Crescent Court  |  Suite 700  |  Dallas, Texas 75201
> O: 972.628.4117  |  C: 469.877.6440  |  F: 972.628.4147
> dsauter@nexpointadvisors.com  |  www.NexPointGroup.com

# EXHIBIT 3

Case 21-03007-sgj Doc 31 Filed 06/09/21    Entered 06/09/21 17:38:21    Page 21 of 25
Case 20-03190-sgj Doc 59 Filed 01/12/21    Entered 01/12/21 07:46:55    Page 1 of 5
Docket #0059  Date Filed: 1/12/2021



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 11, 2021**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | No. 20-03190-sgj |
| | § | |
| JAMES D. DONDERO, | § | |
| | § | |
| Defendant. | § | |

### ORDER GRANTING DEBTOR'S MOTION FOR A PRELIMINARY INJUNCTION
### AGAINST JAMES DONDERO

This matter having come before the Court on *Plaintiff Highland Capital Management,*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210112000000000002

*L.P.'s Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against Mr. James Dondero* [Adv. Pro. Docket No. 2] (the "Motion"), filed by Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"); and this Court having considered (a) the Motion, (b) *Plaintiff Highland Capital Management, L.P.'s Verified Original Complaint for Injunctive Relief* [Adv. Pro. Docket No. 1] (the "Complaint"), (c) the arguments and law cited in the *Debtor's Amended Memorandum of Law in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction against Mr. James Dondero* [Adv. Pro. Docket No. 3] (the "Memorandum of Law," and together with the Motion and Complaint, the "Debtor's Papers"), (d) *James Dondero's Response in Opposition to Debtor's Motion for a Preliminary Injunction* [Adv. Pro. Docket No. 52] (the "Opposition") filed by James Dondero, (e) the testimonial and documentary evidence admitted into evidence during the hearing held on January 8, 2021 (the "Hearing"), including assessing the credibility of Mr. James Dondero, (f) the arguments made during the Hearing, and (g) all prior proceedings relating to the Motion, including the December 10, 2020 hearing on the *Debtor's Motion for a Temporary Restraining Order and Preliminary Injunction against James Dondero* [Adv. Pro. Docket No. 6] (the "TRO Hearing"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that injunctive relief is warranted under sections 105(a) and 362(a) of the Bankruptcy Code and that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest;

2

and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Debtor's Papers, and the evidence submitted in support thereof, establish good cause for the relief granted herein, and that (1) such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate and reorganization process; (2) the Debtor is likely to succeed on the merits of its underlying claim for injunctive relief; (3) the balance of the equities tip in the Debtor's favor; and (4) such relief serves the public interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      James Dondero is preliminarily enjoined and restrained from (a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication; (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents, in whatever capacity they are acting; (c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero; (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned, controlled or managed by the Debtor, and the pursuit of the Plan or any

alternative to the Plan; and (e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, the "Prohibited Conduct").[2]

3.      James Dondero is further preliminarily enjoined and restrained from causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct.

4.      James Dondero is further preliminarily enjoined and restrained from communicating (in person, telephonically, by e-mail, text message or otherwise) with Scott Ellington and/or Isaac Leventon, unless otherwise ordered by the Court.

5.      James Dondero is further preliminarily enjoined and restrained from physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas, Texas, or any other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Mr. Dondero, without the prior written permission of Debtor's counsel made to Mr. Dondero's counsel. If Mr. Dondero enters the Debtor's office or other facilities or systems without such permission, such entrance will constitute trespass.

6.      James Dondero is ordered to attend all future hearings in this Bankruptcy Case by Webex (or whatever other video platform is utilized by the Court), unless otherwise ordered by the Court.

7.      This Order shall remain in effect until the date that any plan of reorganization or liquidation resolving the Debtor's case becomes effective, unless otherwise ordered by the Court.

---

[2] For the avoidance of doubt, this Order does not enjoin or restrain Mr. Dondero from (1) seeking judicial relief upon proper notice or from objecting to any motion filed in this Bankruptcy Case, or (2) communicating with the committee of unsecured creditors (the "UCC") and its professionals regarding a pot plan.

8.      All objections to the Motion are overruled in their entirety.

9.      The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

DOCS_NY:41944.3 36027/002