Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

**ATTORNEYS FOR JAMES DONDERO AND
NANCY DONDERO**

Douglas S. Draper (La. Bar No. 5073)
Leslie A. Collins (La. Bar No. 14891)
Greta M. Brouphy (La. Bar No. 26216)
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
(504) 299-3300 telephone
(504) 299-3399 facsimile

**ATTORNEYS FOR THE DUGABOY INVESTMENT
TRUST**

Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile

**ATTORNEYS FOR NANCY DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | **Adversary No.: 21-03007-sgj** |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO, AND DUGABOY INVESTMENT TRUST** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

# TABLE OF CONTENTS

I.     STATEMENT OF FACTS ............................................................................................. 1

II.    STANDARD OF REVIEW ......................................................................................... 7

III.   ARGUMENT ............................................................................................................. 8

    A.    This Dispute is Governed by An Enforceable Arbitration Provision Reaching All Legal Rights Arising From the LPA. .................................................................................. 10

    B.    The Claims Asserted In Counts V, VI, and VII Are Arbitrable Because they Are Non-Core and Arise Under the LPA. ................................................................................. 13

         1.    The Court Lacks Discretion To Refuse To Compel Arbitration On Count V Because Debtor's Proposed Declaratory Relief Claim Is A Non-Core Claim Arising From The LPA. ...................................................................................................... 14

         2.    The Court Lacks Discretion To Refuse To Compel Arbitration On Count VI And VII Because Debtor's Proposed Claims Asserting Breach Of Fiduciary Duty And Aiding And Abetting Breach Of Fiduciary Duty Are Non-Core Claims Arising From The LPA. ................................................................................................................ 15

    C.    The Court Should Stay All Claims Pending Arbitration. ........................................... 19

IV.   CONCLUSION ......................................................................................................... 19

CORE/3522697.0002/169126194

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acis Cap. Mgmt., L.P.*,
  600 B.R. 541 (Bankr. N.D. Tex. 2019) ............................................................................ 10, 14

*Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*,
  870 F. Supp. 2d 441 (S.D. Tex. 2012) ..................................................................................... 18

*Austin Cap. Mgmt., Ltd. v. Bd. of Trustees of Texas Iron Workers' Pension Fund*,
  No. A-09-CA-351 LY, 2009 WL 10699390 (W.D. Tex. July 30, 2009) ................................... 15

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*,
  566 B.R. 815 (W.D. Tex. 2017) ............................................................................................... 16

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  345 F.3d 347 (5th Cir. 2003) .................................................................................................... 18

*Buell Door Co. v. Architectural Sys., Inc.*,
  No. 3:02-CV-721-AH, 2002 WL 1968223 (N.D. Tex. Aug. 20, 2002) ................................ 10, 11

*In re Cain*,
  585 B.R. 127 (Bankr. S.D. Miss. 2018) .................................................................................... 14

*Coffman v. Provost Umphrey LLP*,
  33 Fed. Appx. 705 (5th Cir. 2002) ........................................................................................... 16

*In re Daisytek, Inc.*,
  323 B.R. 180 (N.D. Tex. 2005) ................................................................................................. 14

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................................. 8, 9

*In re Divine Ripe, L.L.C.*,
  538 B.R. 300 (Bankr. S.D. Tex. 2015) ...................................................................................... 19

*In re Dune Energy, Inc.*,
  575 B.R. 716 (Bankr. W.D. Tex. 2017) .................................................................................... 15

*Elite Precision Fabricators, Inc. v. Gen. Dynamics Land Sys., Inc.*,
  No. CV H-14-2086, 2015 WL 9302843 (S.D. Tex. Dec. 18, 2015) ......................................... 13

*Elkjer v. Scheef & Stone, L.L.P.*,
  8 F. Supp. 3d 845 (N.D. Tex. 2014) ....................................................................................... 8, 11

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................................. 7, 12

CORE/3522697.0002/169126194

*Fleetwood Enterprises, Inc. v. Gaskamp*,
280 F.3d 1069 (5th Cir. 2002) .................................................................................................7

*In re Gandy*,
299 F.3d 489 (5th Cir. 2002) .................................................................................................19

*In re Gaughf*,
19-50947-KMS, 2020 WL 1271595 (Bankr. S.D. Miss. Mar. 12, 2020) ...............................17

*Grant v. Houser*,
469 Fed. Appx. 310 (5th Cir.2012) .........................................................................................9

*Graves v. BP Am., Inc.*,
568 F.3d 221 (5th Cir. 2009) ...................................................................................................8

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) ...........................................................................................18, 19

*Henry v. Cash Biz, LP*,
551 S.W.3d 111 (Tex. 2018) .................................................................................................8, 9

*Hill v. G E Power Sys., Inc.*,
282 F.3d 343 (5th Cir. 2002) .................................................................................................18

*I.D.E.A. Corp. v. WC & R Ints., Inc.*,
545 F. Supp. 2d 600 (W.D. Tex. 2008) ...................................................................................11

*Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*,
No. 17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017) ...............................................15

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) .........................................................................................................12

*Kubala v. Supreme Production Services, Inc.*,
830 F.3d 199 (5th Cir. 2016) ..................................................................................................12

*Landis v. N. Am. Co.*,
299 U.S. 248, 57 S. Ct. 163 (1936) ........................................................................................19

*Madison Foods v. Fleming Cos., Inc. (In re Fleming Cos., Inc.)*,
325 B.R. 687 (Bankr. D. Del. 2005) .......................................................................................12

*In re McCollum*,
621 B.R. 655 (Bankr. N.D. Miss. 2020) .................................................................................17

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir.1983) .................................................................................................11

*Mirant Corp. v. The S. Co.*,
337 B.R. 107 (N.D. Tex. 2006) ...............................................................................................16

iv

*Morphis v. Federal Home Loan Mortgage Corp.*,
  No. 3:02–CV–0210–P, 2002 WL 1461930 (N.D.Tex. July 3, 2002)...........................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ....................................................................................................................8, 9

*Matter of Nat'l Gypsum Co.*,
  118 F.3d 1056 (5th Cir. 1997)..............................................................................................13, 14

*Neal v. Hardee's Food Sys., Inc.*,
  918 F.2d 34 (5th Cir. 1990)........................................................................................................11

*In re OCA, Inc.*,
  410 B.R. 443 (E.D. La. 2007) ....................................................................................................14

*Omni Pinnacle, LLC v. ECC Operating Services. Inc.*,
  255 F. App'x 24 (5th Cir. 2007) .................................................................................................17

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
  139 F.3d 1061 (5th Cir. 1998)......................................................................................................9

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
  297 F.3d 388 (5th Cir. 2002)......................................................................................................11

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
  687 F.3d 671 (5th Cir. 2012) .....................................................................................................13

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .....................................................................................................................12

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (In re Sedco, Inc.)*,
  767 F.2d 1140 (5th Cir.1985)......................................................................................................9

*Sherer v. Green Tree Serv., LLC*,
  548 F.3d 379 (5th Cir. 2008).......................................................................................................7

*Sunterra Corp. v. Perini Bldg. Co.*,
  No. 204CV00784MCEEFB, 2008 WL 11512082 (E.D. Cal. June 12, 2008) ...........................14

*In re Temecula Valley Bancorp, Inc.*,
  523 B.R. 210 (C.D. Cal. 2014) ...................................................................................................14

*Vallejo v. Garda CL Sw., Inc.*,
  948 F. Supp. 2d 720 (S.D. Tex. 2013), aff'd, 559 F. App'x 417 (5th Cir. 2014)...........................9

*Venture Cotton Coop. v. Freeman*,
  435 S.W.3d 222 (Tex. 2014) ........................................................................................................7

*Webb v. Investacorp, Inc.*,
  89 F.3d 252 (5th Cir. 1996).........................................................................................................15

v

*Westmoreland v. Sadoux,*
    299 F.3d 462 (5th Cir. 2002) ................................................................................................. 18

*Zimmerli v. Ocwen Loan Servicing, LLC,*
    432 B.R. 238 (Bankr. N.D. Tex. 2010) ................................................................................. 13

**Statutes**

9 U.S.C. § 3 ........................................................................................................................... 8, 19

9 U.S.C. § 4 ................................................................................................................................ 8

11 U.S.C. § 105(a) ................................................................................................................. 6, 15

11 U.S.C. § 542(b) .................................................................................................................... 5

28 U.S.C. § 157(b) ................................................................................................................... 14

Fed. R. Bankr. P. 7001 .......................................................................................................... 6, 15

AAA Commercial Arbitration Rule 7(a) ................................................................................ 13

CORE/3522697.0002/169126194

## MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Defendants James D. Dondero, Nancy Dondero, and The Dugaboy Investment Trust ("Dugaboy") (the "Defendants") move this Court for an order to stay this adversary proceeding and refer the parties to arbitration, and in further support state the following:

## I.  STATEMENT OF FACTS

1.      On December 24, 2015, Mr. Dondero, on behalf of Strand Advisors, Inc., and Nancy Dondero, on behalf of Dugaboy, executed the Fourth Amended and Restated Agreement (the "LPA") of Limited Partnership of Highland Capital Management, L.P. ("HCM").[1]  Section 6.14 of the LPA provides for Mandatory Arbitration in the event of a legal dispute between the parties arising from the agreement ("Arbitration Provision").  Section 6.14 specifically states:

> **6.14. Mandatory Arbitration**. In the event there is an unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; provided, however, that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief. The arbitration will be conducted by the American Arbitration Association, or another mutually agreeable arbitration service. A panel of three arbitrators will preside over the arbitration and will together deliberate, decide and issue the final award. The arbitrators shall be duly licensed to practice law in the state of Texas.

The Arbitration Provision specifically governs the discovery process for arbitration, the authority of the arbitrators, and the costs of arbitration.[2]

---

[1] The Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. Declaration of Michael P Aigen dated August 30, 2021 ("Aigen Dec.) at Ex. 1. The signatories to it are: (1) General Partner, Strand Advisors, Inc., a Delaware corporation by James D. Dondero, President; (2) Limited Partner, The Dugaboy Investment Trust by Nancy M. Dondero, its Trustee; (3) Limited Partner, The Mark and Pamela Okada Family Trust- Exempt #1 by Lawrence Tonomura, its Trustee; (4) Limited Partner, The Mark and Pamela Okada Family Trust- Exempt #2 by Lawrence Tonomura, its Trustee; (5) Limited Partner, Mark K. Okada; and (6) Limited Partner, Hunter Mountain Investment Trust by John Honis, the President of Beacon Mountain 1 LC, Administrator.
[2] *See* LPA Section 6.14, which states:

2.      From 2013 to 2017, HCRE executed a series of demand Notes in favor of the Debtor

(the "Notes").  The authority to execute promissory note in favor of the Debtor arises from Article 4

of the LPA because a General Partner has full authority to conduct the business, which includes

lending and borrowing money and executing promissory notes.  Article 4 states:

> In addition to the powers now or hereafter granted to a general partner of a limited
> partnership under applicable law or that are granted to the General Partner under
> any provision of this Agreement, the General Partner shall have full power and
> authority to do all things deemed necessary or desirable by it to conduct the
> business of the Partnership, including, without limitation:
> . . . .
>
> (ii) the performance of any and all acts necessary or appropriate to the operation
> of any business of the Partnership (including, without limitation. purchasing and
> selling any asset, any debt instruments, any equity interests, any commercial paper,
> any note receivables and any other obligations);
> . . . .
>
> (vi) the making of any expenditures, the borrowing of money, the guaranteeing of
> indebtedness and other liabilities, the issuance of evidences of indebtedness, and
> the incurrence of any obligations it deems necessary or advisable for the conduct
> of the activities of the Partnership, including, without limitation, the payment of
> compensation and reimbursement to the General Partner and its Affiliates pursuant
> to Section 3.1;
> . . . .
>
> (vii) the use of the assets of the Partnership (including, without limitation, cash on
> hand) for any Partnership purpose on any terms it sees fit, including, without
> limitation, the financing of operations of the Partnership, the lending of funds to
> other Persons, and the repayment of obligations.

---

The discovery process shall be limited to the following: Each side shall be permitted no more
than (i) two party depositions of six hours each, each deposition to be taken pursuant to the
Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five
interrogatories; (iv) twenty-five requests for admissions; (v) ten request for production (in
response, the producing party shall not be obligated to produce in excess of 5,000 total pages
of documents, including electronic documents); and (vi) one request for disclosure pursuant
to the Texas Rules of Civil Procedure. Any discovery not specifically provided for in this
paragraph, whether to parties or non-parties, shall not be permitted. . . . . Each party shall bear
its own attorney's fees, costs and expenses, including any costs of experts, witnesses and /or
travel, subject to a final arbitration award on who should bear costs and fees. The duty to
arbitrate described above shall survive the termination of this Agreement.

3.      In addition, the LPA provides authority for partners to lend money to their Affiliates.

Section 4(e) specifically provides:

> The General Partner or any Affiliate of the General Partner may lend to the Partnership funds needed by the Partnership for such periods of time as the General Partner may determine: provided, however, the General Partner or its Affiliate may not charge the Partnership interest at a rate greater than the rate (including points or other financing charges or fees) that would be charged the Partnership (without reference to the General Partner's financial abilities or guaranties) by unrelated lenders on comparable loans. The Partnership shall reimburse the General Partner or its Affiliate, as the case may be, for any costs incurred by the General Partner or that Affiliate in connection with the borrowing of funds obtained by the General Partner or that Affiliate and loaned to the Partnership. The Partnership may loan funds to the General Partner and any member of the Founding Partner Group at the General Partner's sole and exclusive discretion.

In addition, Section 3.9(f) of the LPA allows for the partnership to make tax loans to the Founding Partners:

> The Partnership shall, upon request of such Founding Partner, make distributions to the Founding Partners (or loans, at the election of the General Partner) in an amount necessary for each of them to pay their respective federal income tax obligations incurred through the effective date of the Third Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., the predecessor to this Agreement.

4.      Debtor demanded payment on the Notes and subsequently filed an adversary proceedings seeking collection, described further below.  One of the affirmative defenses asserted in the adversary proceedings is that Debtor is not entitled to demand payment because, prior to the demands for payment, HCM had agreed that it would not collect the Notes, and that they would be treated as compensation to the Debtor's founder and then-CEO Jim Dondero, if any of certain conditions subsequent were met.[3]  Debtor refers to the agreement as the "Alleged Agreement."  The condition subsequent was the sale of any of HCM's interests in certain portfolio companies (Cornerstone, Trussway and/or MGM) for a greater amount than their cost.[4]

---

[3] *See NexPoint Real Estate Partner, LLC f/k/a HCRE Partners, LLC's First Amended Answer to Plaintiff's Complaint* [Ad. No. 21-03007, Dkt. No. 34 at 8 ¶ 58].
[4] Aigen Dec. Ex. 2, May 28, 2021 Remote Deposition of James Dondero Transcript at 212: 18-25; 213: 1-17.

5. Under Section 4.1(k) of the LPA, the "salaries or other compensation, if any, of the officers and agents of the Partnership [were to] be fixed from time to time by the General Partner." Additionally, under the LPA, Dugaboy had explicit authorization to approve compensation for Jim Dondero and entities he was affiliated with, and thus bind the Partnership through, LPA in § 3.10(a), which provides in pertinent part:

> (a) Compensation. The General Partner and any *Affiliate* of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements *unless approved by a Majority Interest;* LPA § 3.10(a) (emphasis added).

The LPA defines relevant actors in the Compensation provision as follows:

> "'***Majority Interest'*** means the owners of more than fifty percent (50%) of the Percentage Interests of Class A Limited Partners." LPA § 2.1, p.4.

> "'***Class A Limited Partners'*** means those Partners holding a Class A Limited Partnership Interest, as shown on Exhibit A." LPA § 2.1, p.2.[5]

> The Class A shareholders included Strand Advisors, The Dugaboy Investment Trust, Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1, and The Mark and Pamela Okada Family Trust – Exempt Trust #2.[6] Dugaboy alone comprised 75% of the Class A shareholders,[7]

> Nancy Dondero was the Family Trustee of the Dugaboy Trust,[8] and had the power to act for Dugaboy in this regard.[9]

After the Notes were entered into, Mr. Dondero asked Dugaboy (via Ms. Dondero) to approve an agreement that the Notes would be forgiven as compensation to Mr. Dondero upon the favorable sale of any or all of the portfolio company interests by HCM, and she did.[10]

---

[5] Aigen Dec. Ex. 1, LPA at Exhibit A thereof). Exhibit A reflects "The Dugaboy Investment Trust" as a Class A Limited Partner owning 74.4426% of the Class A Limited Partnership Interests.
[6] Aigen Dec. Ex. 1, LPA at Exhibit A thereof.
[7] *See id.*
[8] Aigen Dec. Ex. 3, *Acceptance of Appointment of Family Trustee*, executed by Nancy Marie Dondero on October 13, 2015.
[9] Aigen Dec. Ex. 4, *Trust Agreement Between Dana Scott Breault, Settlor and James D. Dondero and Commonwealth Trust Company, Trustees The Dugaboy Investment*, entered November 15, 2010 at Article 5.2.
[10] Aigen Dec Ex. 2, Remote Deposition of James Dondero Transcript at 176-178.

The General Partner entitled to compensation here is Strand Advisors, Inc. The LPA Preamble states in pertinent part:

> "This [LPA] is entered…by and among Strand Advisors, Inc., a Delaware Corporation (*"Strand"*), as General Partner, the Limited Partners party hereto, and any Person hereinafter admitted as a Limited Partner. LPA Preamble, p.1.

The LPA goes on to articulate Affiliates (of Strand):

> "*'Affiliate'* means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term *'control'* means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise." LPA § 2.1, p.2.

> "*'Person'* means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity." LPA § 2.1, p.5.

It is undisputed that Mr. Dondero was an Affiliate of Strand under the LPA's definition. Thus, Mr. Dondero was entitled to compensation approved by Dugaboy pursuant to the LPA.

6. On January 22, 2021, Highland Capital Management, L.P. ("Debtor" or "Plaintiff" when describing post-petition actions and HCM when describing pre-petition actions) commenced Adversary Proceeding No. 21-03007 against HCRE, asserting a state law, non-core breach of contract claim ("Count I") and an entirely dependent turnover claim under 11 U.S.C. § 542(b) for the amounts allegedly owed on the Notes ("Count II").

7. HCRE answered the adversary complaint, asserting, inter alia, that Debtor's claims should be barred, because prior to the demand for payment HCM agreed it would not collect on the Notes upon fulfillment of conditions subsequent,[11] based upon what the Debtor refers to as the "Alleged Agreement."

---

[11] *NexPoint Real Estate Partner, LLC f/k/a HCRE Partners, LLC's First Amended Answer to Plaintiff's Complaint* [Ad. No. 21-03007, Dkt. No. 34 at 8 ¶ 58].
[11] Aigen Dec. Ex. 2, May 28, 2021 Remote Deposition

8. On August 23, 2021, the Court entered an order permitting Debtor to file its *Amended Complaint for (I) Breach of Contract, (II) Turnover of Property, (III) Fraudulent Transfer, and (IV) Breach of Fiduciary Duty* ("Amended Complaint") asserting additional claims for relief including: Avoidance and Recovery of Actual Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550 against Mr. Dondero ("Count III"); Avoidance and Recovery of Actual Fraudulent Transfer Under 11 U.S.C. § 544(b) and 550, and Tex. Bus. & C. Code § 24.005(a)(1) against Mr. Dondero ("Count IV"); Declaratory Relief pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7001 against Dugaboy ("Count V"); Breach of Fiduciary Duty against Dugaboy ("Count VI"); and Aiding and Abetting a Breach of Fiduciary Duty against Mr. Dondero and Nancy Dondero ("Count VII"). Debtor seeks avoidance of the Alleged Agreement, declaratory relief, and damages. The Parties agreed that the Defendants would answer or otherwise move against the Amended Complaints on or before September 1, 2021.[12] The new claims, under Counts V, VI, and VII are non-core contract claims that arise from the LPA, containing a broad arbitration provision. Further, the Defendants have critical affirmative defenses for the claims for declaratory relief, breach of fiduciary, and aiding and abetting breach of fiduciary duty, that are rooted in non-core state contract law that also arise from the LPA.

9. Although Debtor alleges that it "believes that the Alleged Agreement is a fiction created after the commencement of this Adversary Proceeding for the purpose of avoiding or at least delaying paying the obligations due under the notes,"[13] there is no doubt that adjudication of the existence and enforceability of the Alleged Agreement affects all of Debtor's claims under Counts V, VI, and VII for declaratory relief, breach of fiduciary duty and breach of fiduciary duty. These claims

---

[12] *See Stipulation and Agreed Order Governing Discovery and Other Pre-Trial Issues* attached as Exhibit C to *Debtor's Unopposed Motion for Leave to Serve and File Amended Complaint* [Adv. No. 21-03007, Dkt. No. 55-2 at Exhibit C] stipulating to August 30, 2021 which has been extended to September 1, 2021 by the parties via email communication.
[13] *Amended Complaint* [Adv. No. 21-03007, Dkt. No. 63 at ¶ 3].

pertain to loans made by the Debtor to its Affiliates and compensation for the Debtor's CEO, all of which are governed by the LPA.[14]

10.     Defendants requests the Court order the parties to arbitration on Counts V, VI, and VII, as provided by the pre-petition LPA entered into by the parties, and stay the adversary proceeding pending arbitration.

## II.     STANDARD OF REVIEW

11.     When deciding whether to grant a motion to compel arbitration, the Fifth Circuit has established a two-step analysis for determining whether parties must arbitrate a particular claim or set of claims under the FAA: (A) there must be an enforceable agreement to arbitrate; and (B) the claims must be arbitrable.  *See Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted) (stating "First we must ask if the party has agreed to arbitrate the dispute. . . If so, we then ask if any federal statute or policy renders the claims non-arbitrable."); *Venture Cotton Coop. v. Freeman,* 435 S.W.3d 222, 227 (Tex. 2014) ("A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement.").  Once a party seeking to compel arbitration establishes the asserted claims fall within a valid arbitration agreement, the burden shifts, and the party seeking to avoid arbitration must prove an affirmative defense to the provision's enforcement, such as waiver.  *Venture Cotton Coop.*, 435 S.W.3d at 227.

12.     In applying the first portion of the two-step analysis, state contract law determines whether parties entered into a valid agreement to arbitrate a set of claims.  *See, e.g., Fleetwood Enterprises, Inc. v. Gaskamp,* 280 F.3d 1069 (5th Cir. 2002) ("This determination is generally made on the basis of 'ordinary state-law principles that govern the formation of contracts.'" (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The second part of determining

---

[14] *See generally* Aigen Dec. Ex. 1, LPA Article 4 and Section 3.10.

whether the parties have agreed to arbitrate—the question of whether the dispute comes within the scope of the agreement—"is answered by applying the federal substantive law of arbitrability." *Graves v. BP Am., Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009) (citations omitted).

13.     Under both Texas and Federal law, "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983); *see also Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (quoting *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002). In addition, the Supreme Court has declared that the Federal Arbitration Act, "is a strong congressional declaration of a liberal policy favoring arbitration." *See, e.g., Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 849 (N.D. Tex. 2014) (collecting cases) ("if a valid agreement to arbitrate does exist, the court must observe the strong federal policy favoring arbitration and resolve all ambiguities in favor of arbitration.").

### III.     **ARGUMENT**

14.     This Court should compel arbitration as to Counts V, VI, and VII of the Amended Adversary Complaint because: (1) The claims under Counts V, VI, and VII comprise disputes involving legal rights or remedies arising from the LPA and are governed by an enforceable, and broadly worded, arbitration provision; (2) Counts V, VI, and VII assert noncore claims, and in the Fifth Circuit courts do not have discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings and should compel arbitration of even core claims if they are not integral to the bankruptcy; and (3) federal and state policy strongly favors arbitration.

15.     The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "Federal policy strongly favors enforcing

arbitration agreements." *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp*, 460

U.S. at 24. When a party moves to compel arbitration, the FAA requires district courts to order

arbitration of arbitrable claims. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (In re

Sedco, Inc.)*, 767 F.2d 1140, 1147 (5th Cir.1985). Because of the strong presumption in favor of

arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its

invalidity." *Vallejo v. Garda CL Sw., Inc.*, 948 F. Supp. 2d 720, 724–25 (S.D. Tex. 2013), aff'd, 559

F. App'x 417 (5th Cir. 2014) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297

(5th Cir.2004)); *see also Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir.2012) (noting the strong

presumption in favor of arbitration).

16.     "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S.

at 24–25; *see also Henry*, 551 S.W.3d at 115 (quoting *In re Serv. Corp. Intern.*, 85 S.W.3d at 174).

The Fifth Circuit resolves doubts concerning the scope of matter covered by an arbitration provision

in favor of referring arbitration. The court states:

> We emphasize that our sole responsibility is to determine whether this dispute is
> governed by an arbitration clause, not to determine the merits of the dispute. *See
> Snap–On Tools Corp., v. Mason*, 18 F.3d 1261, 1267 (5th Cir.1994). "We resolve
> doubts concerning the scope of coverage of an arbitration clause in favor of arbitration.
> . . . [A]rbitration should not be denied 'unless it can be said with positive assurance
> that an arbitration clause is not susceptible of an interpretation which would cover the
> dispute at issue.'" *Neal*, 918 F.2d at 37 (internal citations omitted). *See also AT & T
> Technologies Inc. v. Communications Workers of America*, 475 U.S. at 643, 650
> (1986).

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

**A.** **This Dispute is Governed by An Enforceable Arbitration Provision Reaching All Legal Rights Arising From the LPA.**

17.     Debtor's claims asserted in Counts V, VI, and VII arise under the LPA, which contains an enforceable and broadly worded arbitration provision.  The U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division, has already interpreted arbitration provisions with identical scope language (and near-identical scope language) to the Arbitration Provision under the LPA, to be valid and binding.  *See In re Acis Cap. Mgmt., L.P.*, 600 B.R. 541, 549-50 (Bankr. N.D. Tex. 2019).[15] Importantly, the court made clear that "it would seem to be beyond peradventure that [the arbitration clause] was, at one time, enforceable between the parties, ***with regard to any disputes that arose regarding the agreements***."  *Id*. at 552 (emphasis added); *see also id*. at 557 (emphasis added) ("there were valid arbitration agreements ***that applied to all disputes*** arising out of the [agreements at issue].").  Accordingly, the court concluded that all claims at issue, including claims for declaratory judgment, fell within the scope of the relevant arbitration clauses.  *See id.* at 558.

18.     The Arbitration Provision here also covers any "unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies ***arising from this Agreement***."  LPA, Section 6.14 (emphasis added).  Such broad language is sufficient to reach collateral matters, including the oral agreement between the parties which involves legal rights arising from LPA.[16]  *Buell Door Co.*

---

[15]     The Court's decision provides the relevant arbitration clause language.  The arbitration clause at Section 16(f) of the Sub-Advisory Agreement states:

> [I]n the event there is an unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies ***arising from*** this Agreement, the parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act. . . .

*In re Acis Cap. Mgmt., L.P.*, 600 B.R. at 550 (emphasis added).

[16] It is important to note that the particular language "arising from" is significant in determining that the Arbitration Provision here is broad.  The Fifth Circuit and Texas District Courts have specifically determined

*v. Architectural Sys., Inc.*, No. 3:02-CV-721-AH, 2002 WL 1968223, at *6 (N.D. Tex. Aug. 20, 2002) (concluding that the phrase "arising out of" and similar language constitute "broad" arbitration clauses); *see also Elkjer*, 8 F. Supp. at 855 (concluding that the arbitration clause which uses the phrase "arising under or in connection with this [Partnership] Agreement," is "broad [and] capable of expansive reach" to include statutory claims). "Broad arbitration clauses are not limited to claims which literally 'arise under [a] contract,' but rather embrace all disputes between the parties ***having a significant relationship*** to the contract regardless of their label." *Id.* at *4 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir.1998) (emphasis added) (internal citations omitted).

19. In the Fifth Circuit, a "broadly construed arbitration provision may encompass claims arising under a separate agreement." *See, e.g., Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393–94 (5th Cir. 2002) (holding that an arbitration provision, which covered "any and all claims. . . arising out of or relating to" an agreement, applied to claims arising under a separate agreement); *see also Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 38 (5th Cir. 1990) (holding that an arbitration provision encompassing "any and all disputes between [the parties] . . . reach[ed] all aspects of the parties' relationship," including claims arising under a separate agreement); *see also I.D.E.A. Corp. v. WC & R Ints., Inc.*, 545 F. Supp. 2d 600, 606 (W.D. Tex. 2008) (noting a broad arbitration provision

---

that only the phrase "arising under" indicates a narrow arbitration clause, rather than broad. This Court has held:

> upon reviewing the above referenced Fifth Circuit cases, the court concludes that the phrase "arising out of" and similar language constitute "broad" arbitration clauses. *Accord Morphis v. Federal Home Loan Mortgage Corp.*, No. 3:02–CV–0210–P, 2002 WL 1461930, *3–4 (N.D.Tex. July 3, 2002) (provision that "any and all disputes between [the parties]," with no limiting clause constituted a broad clause). On the other hand, the phrase "arising under" indicates a "narrow" arbitration clause. *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir.1983) (the term "arising under" is relatively narrow) (citation omitted).

*Buell Door Co.*, 2002 WL 1968223, at *6. Here, the "arising from" language of the Arbitration Provision is similar to "arising of out" and is therefore broad.

CORE/3522697.0002/169126194

may encompass claims arising under a separate agreement). Accordingly, the Arbitration Provision covers all of the claims regardless if the arise under the LPA or the separate Notes because the authority to enter into the Notes arises from the LPA which reaches all aspects of the parties' relationship.

20. Here, the LPA choice of law provision, Section 6.1, provides the "Agreement shall be construed in accordance with and governed by the laws of the state of Delaware. . . ." As a result, Delaware state contract law determines whether the LPA includes a valid agreement to arbitrate. Delaware arbitration law mirrors federal law in that "public policy of Delaware favors arbitration." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (citations omitted). Even Debtor's rejection of the LPA does not absolve Debtor of its obligation to arbitrate. It is well established that the "rejection of a contract, or even breach of it, will not void an arbitration clause. . . . Any different conclusion would allow a party to avoid arbitration at will simply by breaching [or rejecting] the contract." *Madison Foods v. Fleming Cos., Inc. (In re Fleming Cos, Inc.)*, 325 B.R. 687, 693-94 (Bankr. D. Del. 2005) (citations omitted).

21. Moreover, any question about the scope of the arbitration agreement, including the arbitrability of any particular claim, is for the arbitrator. Under the FAA, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute. . . , so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citations omitted). The Fifth Circuit provides an in-depth explanation of who decides what issues when a contract includes an arbitration provision. *See Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199 (5th Cir. 2016).

22.     Incorporating rules from an arbitration service provider that themselves delegate the question of arbitrability to the arbitrator clearly and unmistakably expresses the parties' intent to leave the question of arbitrability to the arbitrator. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). Here, the Arbitration Provision provides that the "arbitration will be conducted by the American Arbitration Association, or another mutually agreeable arbitration service. A panel of three arbitrators will preside over the arbitration and will together deliberate, decide and issue the final award." The rules of the American Arbitration Association provide that the arbitrator is to decide questions of arbitrability. AAA Commercial Arbitration Rule 7(a). Because the parties' arbitration delegates decision-making to the arbitrators, where the parties entered an agreement to arbitrate, questions of scope and arbitrability should be left to the arbitrator.

### B.    The Claims Asserted In Counts V, VI, and VII Are Arbitrable Because they Are Non-Core and Arise Under the LPA.

23.     Under the LPA, the Court must compel arbitration on Counts V, VI, and VII of the Amended Complaint, because all of the claims are non-core claims arising from the rights and obligations under the LPA. Bankruptcy courts have no discretion to refuse to compel the arbitration of non-core matters. *See, e.g., Elite Precision Fabricators, Inc. v. Gen. Dynamics Land Sys., Inc.*, No. CV H-14-2086, 2015 WL 9302843, at *7 (S.D. Tex. Dec. 18, 2015) (citation omitted) (quoting "it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings"). More specifically, under Fifth Circuit precedent, a bankruptcy court only has discretion to refuse to compel arbitration of an arbitrable claim where: (1) "the proceeding derives exclusively from the provisions of the bankruptcy code;" and (2) "arbitration of the proceeding would conflict with the purposes of [the bankruptcy code]." *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997)*; see also Zimmerli v. Ocwen Loan Servicing, LLC*, 432 B.R. 238, 242 (Bankr. N.D. Tex. 2010). "Importantly, however, '*a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core'*

*bankruptcy proceedings* under 28 U.S.C. § 157(b)." *In re Cain*, 585 B.R. 127, 134–35 (Bankr. S.D. Miss. 2018) (emphasis added) (citation omitted) (stating "it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings."); *In re Acis Cap. Mgmt., L.P.*, 600 B.R. at 560 (in the *Acis* case—unlike here—the claims at issue were "an integral part of determining . . . proofs of claim," resulting in the court denying the motion to compel arbitration).

24.     For claims that are "derivative of the pre-petition legal or equitable rights possessed by a debtor" it is beyond dispute that "it is 'universally accepted' that such issues are arbitrable." *In re Cain*, 585 B.R. at 137 (citing *Nat'l Gypsum Co.*, 118 F.3d at 1066, 1069). In other words, for non-core proceedings, a court "must give effect to the terms of any applicable arbitration clauses." *In re Daisytek, Inc.*, 323 B.R. 180, 188 (N.D. Tex. 2005).

## 1.     **The Court Lacks Discretion To Refuse To Compel Arbitration On Count V Because Debtor's Proposed Declaratory Relief Claim Is A Non-Core Claim Arising From The LPA.**

25.     Debtor's declaratory relief claim simply seeks declarations concerning the extent of limited partner (including Dugaboy's) authority under the LPA, including authority to enter into the Alleged Agreement on behalf of the Partnership.[17] This is a legal dispute arising from LPA, a pre-petition contract, thus coming within the Arbitration Provision and governed by state contract law. Courts generally agree that claims for declaratory judgment which could also exist outside of bankruptcy are non-core proceedings.[18] *See, e.g., In re OCA, Inc.*, 410 B.R. 443, 450 (E.D. La.

---

[17] *See Amended Complaint* [Adv. No. 21-03006, Dkt. No. 63 at ¶¶ 83-86].
[18] *See also In re Temecula Valley Bancorp, Inc.*, 523 B.R. 210, 222–23 (C.D. Cal. 2014)("That court found a trustee's claim for declaratory relief as to the ownership of similar tax refunds non-core because it was a "dispute between private parties" and arose out of a pre-bankruptcy tax sharing agreement governed by state contract law); *see also In re SFD @ Hollywood, LLC*, 414 B.R. 794, 797 (Bankr. S.D. Fla. 2009)("This proceeding [for declaratory judgment] could also exist outside of bankruptcy. Accordingly, this is a non-core proceeding in which the Court cannot enter a final order, absent consent of the district court and the parties."); see also *Sunterra Corp. v. Perini Bldg. Co.*, No. 204CV00784MCEEFB, 2008 WL 11512082, at *4 (E.D. Cal. June 12, 2008)("The new causes of action--strict liability, negligence, breach of contract, professional

2007)("That the doctors' claims are for breach of contract, breach of fiduciary duty and declaratory relief, and are entirely based on state law, supports a finding that they are noncore claims.")

26. Therefore, the Court lacks discretion to refuse to compel arbitration on Count V asserting Declaratory Relief pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7001 against Dugaboy. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 260 (5th Cir. 1996) (district court did not abuse discretion in refusing to consider plaintiffs' request for declaratory relief where order granting defendant's motion to compel arbitration disposed of same issues raised in declaratory judgment action); *see also Austin Cap. Mgmt., Ltd. v. Bd. of Trustees of Texas Iron Workers' Pension Fund*, No. A-09-CA-351 LY, 2009 WL 10699390, at *8 (W.D. Tex. July 30, 2009) (finding action seeking declaratory relief arbitrable); *see also Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2017) (stating that permitting a party to obtain declaratory relief from a court when there is a valid arbitration agreement is "essentially the same relief as that otherwise reserved for the arbitrator. It would make little sense to include such an expansive loophole in what is otherwise a sweeping arbitration provision.").

## 2. The Court Lacks Discretion To Refuse To Compel Arbitration On Count VI And VII Because Debtor's Proposed Claims Asserting Breach Of Fiduciary Duty And Aiding And Abetting Breach Of Fiduciary Duty Are Non-Core Claims Arising From The LPA.

27. Count VI asserting Breach of Fiduciary Duty against Dugaboy and Count VII Aiding and Abetting a Breach of Fiduciary Duty against Mr. Dondero and Nancy Dondero for entering into the Alleged Agreement, must be arbitrated because they are non-core claims that arise under the LPA. It is well established that state law claims, such as breach of fiduciary duty and aiding and abetting breach of fiduciary duty, are non-core claims. *See, e.g., In re Dune Energy, Inc.*, 575 B.R. 716, 729 (Bankr. W.D. Tex. 2017) ("Courts within the Fifth Circuit have consistently found that post-

---

negligence, and declaratory relief--would also exist independently of bankruptcy laws and are similarly "non-core" proceedings.").

confirmation suits by plan trustees based on state law claims are only within the 'related to' (and not 'core') bankruptcy jurisdiction of a federal court."); *see also Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 829–30 (W.D. Tex. 2017) (stating post-confirmation claims for breach of fiduciary duty and state law claims are "related to" claims); *see also Mirant Corp. v. The S. Co.*, 337 B.R. 107, 120 (N.D. Tex. 2006).

28.     The breach of fiduciary duty claims under Count VI and aiding and abetting breach of fiduciary duty under Count VII are—and by their own terms—premised on Dugaboy's authority to bind the Debtor under the LPA.[19]   The Debtor challenges whether the LPA affords the right to Dugaboy to approve such compensation, thus, any evaluation of the breach of fiduciary duty-related claims must first entail an analysis of the LPA, making construction of the LPA – the agreement containing the arbitration clause, a predicate to the analysis of the breach of fiduciary duty claims. Thus, Counts VI and VII involve unresolved legal disputes between the parties—including the Debtor and Mr. Dondero, Nancy Dondero, and Dugaboy, who are all parties and/or officers/directors/partners/employees/agents/affiliates/representatives of a General or Limited Partner—concerning legal duties to the Partnership that would not exist outside of the LPA.

29.     The Fifth Circuit makes clear that where, as here, the breach of fiduciary duty (or aiding and abetting fiduciary duty) claim is interwoven with the partnership agreement containing an arbitration clause, the fiduciary claims will be subject to arbitration.  *See Coffman v. Provost * Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 732 (E.D. Tex. 2001), *aff'd sub nom. Coffman v. Provost Umphrey LLP*, 33 Fed. Appx. 705 (5th Cir. 2002) ("Even if it is conceivable that Plaintiff

---

[19] *See Amended Complaint* [Adv. No. 21-03007, Dkt. No. 63 at ¶ 89] ("*If Dugaboy or Ms. Dondero (as Representative) had the authority to enter into the Alleged Agreement on behalf of the Debtor, then Dugaboy and/or Ms. Dondero breached their fiduciary duty* of care to the Debtor by entering into and authorizing the purported Alleged Agreement on behalf of the Debtor."); *id.* ¶¶ 92-94 (the Donderos "were aware that Dugaboy would have fiduciary duties to the Debtor *if it acted to bind the Debtor*," and the Donderos "aided and abetted Dugaboy's breach of its fiduciary duties to the Debtor by knowingly *participating in the authorization of the purported Alleged Agreement*.")

could maintain a claim for breach of fiduciary duty without the Partnership Agreements, that alone is not sufficient grounds for concluding that the claim is not within the scope of the arbitration clause . . . the Partnership Agreements will determine whether a fiduciary duty was breached—whether that duty arises from the common law or from the contract itself. . . . For these reasons, the court finds Plaintiff's breach of fiduciary duty claim to be subject to arbitration."); *see also Omni Pinnacle, LLC v. ECC Operating Services. Inc.*, 255 F. App'x 24, 25-26 (5th Cir. 2007) (internal quotation marks omitted) ("A dispute arises out of or relates to a contract if the legal claim underlying the dispute could not be maintained without reference to the contract.").

30.     Because breach of fiduciary duty and aiding and abetting breach of fiduciary duty are non-core state-law claims that could exist outside of bankruptcy, the reviewing court lacks discretion to refuse enforcement of an otherwise-applicable arbitration agreement as to these claims.  *See In re McCollum*, 621 B.R. 655, 659 (Bankr. N.D. Miss. 2020) (finding that breaching its fiduciary duty "is a state law contract claim which arose prepetition, could exist outside the bankruptcy case, and is tangential to the bankruptcy case.  It does not invoke a substantive right created by bankruptcy law and is a non-core claim."); *In re Gaughf*, 19-50947-KMS, 2020 WL 1271595, at \*4 (Bankr. S.D. Miss. Mar. 12, 2020) ("Aiding and Abetting Count is non-core.").  Additionally, claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty do not reference the Bankruptcy Code or any right conferred by the Code.  *See In re McCollum*, 621 B.R. at 659.  Therefore, the Court lacks discretion to refuse to compel arbitration on Count VI asserting Breach of Fiduciary Duty against Dugaboy and Count VII Aiding and Abetting a Breach of Fiduciary Duty against Mr. Dondero and Nancy Dondero.

31.     That Nancy Dondero is not personally a party to the LPA does not impair her right to enforce the arbitration agreement it contains. Debtor alleges misconduct by her and a signatory to the LPA relating to fiduciary duties Debtor alleges arise out of the LPA.  There are two circumstances

CORE/3522697.0002/169126194

under which a nonsignatory can compel arbitration: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory; or (2) when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002). Both circumstances are implicated by Debtor's allegations against Nancy Dondero.

32. First, non-signatories are entitled to invoke an arbitration agreement when the claim against the non-signatory arises from the contract with an arbitration provision. *See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000))("[The plaintiff] cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory."); *see also Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 450–51 (S.D. Tex. 2012) (citing *Grigson,* 210 F.3d at 527). Because Debtor charges Nancy Dondero with breaching fiduciary duties (and aiding and abetting breaches of such duties) that arise out of the LPA, she falls precisely within the ambit of cases like *Bridas,* and *Grigson* and *Amegy*.

33. Second, when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract—here the allegations are made against Nancy Dondero (a non-signatory) and Dugaboy (a signatory) to the LPA—the non-signatory may compel arbitration on the claims. *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002) (affirming that "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.");

*see also Grigson*, 210 F.3d at 526 ("a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff").

**C.**     **The Court Should Stay All Claims Pending Arbitration.**

34.     The claims that the Court refers to arbitration must be stayed pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. *See In re Gandy*, 299 F.3d 489, 494–95 (5th Cir. 2002) (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987) ("A court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement"). Further, bankruptcy courts generally do not have discretion to decline to stay, pending arbitration, proceedings involving non-core matters. *Id.* at 495. Accordingly, the Court should stay each of the Debtor's claims against Defendants pending arbitration.

35.     Should the Court not refer arbitration on every claim, in the alterative, the Court should stay the entire adversary proceeding pending arbitration. Permitting any claims to continue herein, while some or all claims are subject to arbitration would be unnecessarily expensive and duplicative. The Court has the inherent power to grant a discretionary stay of a proceeding pending arbitration when there are issues common to the arbitration and the court proceeding and those issues may be decided by the arbitrator. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936) (stating that the power to stay proceedings is incidental to power "inherent in every court to control disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also In re Divine Ripe, L.L.C.*, 538 B.R. 300, 309 (Bankr. S.D. Tex. 2015) (same).

## IV.     CONCLUSION

WHEREFORE, for the reasons above, Defendants respectfully request that this Court compel arbitration on Counts V, VI, and VII, and order a stay of the proceedings pending arbitration.

Dated: September 1, 2021

Respectfully submitted,

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS JAMES DONDERO AND NANCY DONDERO**

Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile
Email: elmsd@gtlaw.com

**ATTORNEYS FOR NANCY DONDERO**

Douglas S. Draper (La. Bar No. 5073)
Leslie A. Collins (La. Bar No. 14891)
Greta M. Brouphy (La. Bar No. 26216)
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
(504) 299-3300 telephone
(504) 299-3399 facsimile
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 1, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez